**SESSIONS & KIMBALL LLP**
Larry Herrera, State Bar No. 278315
23456 Madero, Suite 170
Mission Viejo, California 92691
Tel: (949) 380-0900
Fax: (949) 380-8283

Attorneys for Plaintiff
SCARLET LLOYD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCARLET LLOYD, an individual ) | Case No.  8:24-cv-01867-FWS-DFM |
| ) | |
| Plaintiff, ) | **FIRST AMENDED COMPLAINT FOR:** |
| ) | |
| v. ) | 1) Sex Discrimination (Gov. Code §12940(a)); |
| ) | |
| JOHN EVERETT CREIGHTON aka ) RHETT CREIGHTON; CHAIN ) STARTER, LLC; and DOES 1-50, ) inclusive, ) | 2) Sexual Harassment (Gov. Code § 12940(j)); |
| ) | 3) Retaliation for Complaints of Discrimination or Harassment (Gov. Code §12940(h)); |
| Defendants. ) | 4) Whistleblower Retaliation (Lab. Code §1102.5) |
| ) | |

_____

**JURY TRIAL DEMANDED**

Plaintiff SCARLET LLOYD hereby complains and alleges as follows:

## PRELIMINARY ALLEGATIONS

1.     The amount in controversy is in excess of the minimum jurisdiction of this court.

2.     Plaintiff SCARLET LLOYD ("LLOYD" or "PLAINTIFF") is an individual residing in the State of Texas.

3.     Respondent JOHN EVERETT CREIGHTON aka RHETT CREIGHTON ("CREIGHTON") is a resident of the United States territory or

Puerto Rico.

4. Respondent CHAIN STARTER, LLC ("CS") is a limited liability company created under the laws of the state of Texas.

5. The true names and capacities of DEFENDANT DOES 1 through 50 inclusive ("DEFENDANT DOES"), whether individual, corporate, associate, or otherwise, are unknown to LLOYD, who therefore sues such DEFENDANT DOES by fictitious names pursuant to Code of Civil Procedure § 474. LLOYD will amend the Complaint to show their true names and capacities once they have been ascertained.

6. Defendants listed in paragraphs 3-5 are collectively referred to herein as "DEFENDANTS."

7. LLOYD is further informed and believes, and thereon alleges, that each of the fictitiously named RESPONDENT DOES is responsible in some manner for the occurrences herein alleged, and that LLOYD's injuries and damages as alleged herein were proximately caused by their conduct.

8. LLOYD is informed and believes, and thereon alleges, that DEFENDANTS, and each of them, at all relevant times herein were the agents, employees, servants, joint venturers, alter egos, parents, subsidiaries, management companies, holding companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining DEFENDANTS. DEFENDANTS, in doing the things hereinafter alleged, were acting within the course and scope of such relationships and are responsible in some manner for the occurrences herein alleged and, as a proximate cause, of LLOYD's damages as herein alleged.

## JURISDICTIONAL REQUIREMENTS AND PROCEDURAL HISTORY

9. On December 23, 2020, LLOYD filed a complaint in United States District Court for the District of Puerto Rico.

10. On February 18, 2021, Defendants filed a motion to compel arbitration, asserting an arbitration agreement that Defendants required Lloyd to

sign in order to begin her employment.

11.     The arbitration agreement that Defendants asserted provided that all disputes would be governed, construed, and enforced in accordance with the laws of the State of California.

12.     On April 28, 2021, the District Court denied Defendants' motion to compel arbitration.

13.     On May 5, 2021, Defendants filed a notice of appeal of the District Court's denial their motion to compel arbitration.

14.     On September 15, 2021, the District Court issued a ruling titled "Confession of Error and Indicative Ruling," changing its ruling on Defendants' motion to compel arbitration, and ordering the case to be arbitrated under the laws of the State of California.

15.     On January 25, 2022, Defendant filed the arbitration with the Judicial Arbitration and Mediation Service (JAMS), requesting the case be adjudicated under California law, in the state of California.

16.     By enforcing the arbitration agreement and availing itself of the laws and venue of the State of California, Defendant forced Lloyd to terminate her relationship with the lawyer she worked with in Puerto Rico.  Lloyd was forced to find a lawyer licensed in California to represent her.

17.     On July 12, 2022, Lloyd hired present counsel, Larry Herrera, Esq., of the firm Sessions & Kimball, LLP, to represent her the pending arbitration.

18.     The parties then conducted extensive written discovery, with Defendant sending two lawyers to Texas in February 2023 to conduct a three-day deposition with Lloyd.

19.     CREIGHTON also sat for a deposition on March 14, 2023 and March 31, 2023.

20.     The case was set for arbitration hearing on August 31, 2023, to be heard at JAMS' Orange County Resolution Center.

21.     On July 13, 2023, Defendants notified JAMS that they were refusing to pay the arbitration fee necessary for the case to go to hearing, in violation of Cal. Code Civ. Proc. §1281.97.

22.     Defendants have urged Lloyd to re-file her case in Puerto Rico District Court, knowing that this would require Lloyd to find another lawyer in Puerto Rico, incurring delay and difficulty.

23.     Defendants availed themselves of the laws and venue of the State of California when it went through great trouble to compel an arbitration agreement that had a California choice of law provision, then requested that the arbitration be venued in California.

24.     Defendants requested and submitted to California and Orange County jurisdiction and venue when they chose to enforce the arbitration agreement that provided for a California choice of law clause, and when they chose to have the arbitration hearing held in Orange County.

## FACTUAL BACKGROUND

25.     Plaintiff is a female, of legal age, and a resident of Austin, Texas.

26.     CS is a limited liability company created under the laws of Texas.

27.     John Everett Creighton (hereinafter "CREIGHTON") is the sole member and Managing Partner of CS.

28.     Lloyd, CREIGHTON, and CS entered into an arbitration agreement stating that any disputes relating to Lloyd's employment with CS or CREIGHTON would be arbitrated through JAMS, under the laws of the state of California.

29.     At all times relevant herein, and particularly at all times when CREIGHTON or CS engaged in any unlawful acts, CREIGHTON and CS were Lloyd's employer within the meaning of the statutes invoked herein.

30.     Plaintiff began to work for CS and for CREIGHTON in July 2018

while she was a resident of Austin, Texas.

31.    Plaintiff's salary was paid both by CS and by CREIGHTON's personal bank account.

32.    CREIGHTON's level of control over CS renders the entity a mere shell of him. There is such a unity of interest and ownership between CREIGHTON and CS that their separate personalities no longer exist.

33.    Moreover, CS was used by CREIGHTON to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or defend crime.

34.    In the alternative, CREIGHTON and CS were both Plaintiff's joint employers and/or constitute a single entity for purposes of the statutes herein invoked.

35.    Since August, 2018 and up to Plaintiff's discriminatory and retaliatory employment termination, CREIGHTON was her employer.

36.    Plaintiff began working for Defendants in August, 2018.

37.    During her employment with the Defendants, Plaintiff's work performance met and exceeded the employers' requirements and the duties of her job position.

38.    Shortly after having started to work for the Defendants, CREIGHTON offered Plaintiff to work directly for him in Puerto Rico.

39.    In order to persuade Plaintiff to move to Puerto Rico, CREIGHTON told her that he had created crypto currencies, and that in 2017 he created a coin

which was estimated in several billions of dollars, and he wanted to create another coin.

40.    CREIGHTON also told Plaintiff that if she came with him to Puerto Rico, she would be the cofounder of this new coin; that she would be financially set for life; and that she would be able to get any job in the bitcoin industry in the future.

41.    In October 2018, Plaintiff accepted CREIGHTON's offer to move to Puerto Rico and continue her employment with the Defendants.

42.    As part of Plaintiff's employment compensation, CREIGHTON paid for all her relocation and housing expenses in an apartment that he owned which is located in Puerto Rico.

43.    While working for CREIGHTON, Plaintiff was a victim of sexual harassment, sex discrimination, retaliation in her employment, and was also wrongfully discharged.

44.    Plaintiff was sexually harassed by CREIGHTON who was Plaintiff's sole supervisor, and who subjected her to a hostile, offensive, and intimidating work environment. He also unreasonably interfered with Plaintiff's performance on the job.

45.    The sexual harassment by CREIGHTON consisted of unwelcome sexual advances, requests for sexual favors, and conduct of sexual nature that was motivated by Plaintiff's gender, and included among others, numerous unwanted requests to have sex with him and with other people, he was constantly staring at Plaintiff's body in a lascivious way, tricked the Plaintiff on several occasions into

walking into CREIGHTON's office while he was masturbating, and was constantly making sexually related comments.

46.     Among others, CREIGHTON: propositioned Plaintiff for sex multiple times; asked her to have a threesome with him and a prostitute; was constantly harassing the Plaintiff; would constantly leave around the office his artificial vaginas covered with semen for Plaintiff to see while she was working; he would constantly leave around his used condoms, sex toys, and ropes to tie people, for Plaintiff to see them while working; he would pee with the bathroom door open; he would call the Plaintiff to complain because he was not having sex, because his companion would not blow him, because his companion's dog was a "cock block" that prevented him from having sex, to say to her that he was horny, to talk about his sex life and/or to talk about his prostitutes; he would order Plaintiff to book flights for his prostitutes; he asked Plaintiff personal questions about her sex life; he would touch and caress her inappropriately; he told Plaintiff that he was having trouble lifting his sex doll named Julia; he told Plaintiff that he wanted to open a porn filming studio in Puerto Rico; he moved a prostitute into his apartment; and basically told Plaintiff that if he was not having regular sex her job would be in jeopardy.

47.     CREIGHTON called the Plaintiff and told her that he needed her in his office (presumably to assign her some work task), but when she arrived there, she would find out that he was masturbating and wanted her to see him. Plaintiff then realized that he just called her into his office because he wanted her to see him

masturbating. When Plaintiff saw him and freaked out, CREIGHTON would start to laugh. After such incident, to avoid those situations, prior to going to his office, Plaintiff texted ahead of time to let him know she was coming over, and she also knocked upon arrival and yelled down to his office when she arrived. CREIGHTON, however, wanted her to see him masturbating and would make her believe that it was okay to come in.

48.    On one occasion, CREIGHTON and Plaintiff flew to Latvia, Europe, to attend to a crypto currency conference wherein he introduced her as his business partner to industry people. These individuals had flown from all over Europe to invest in this coin that CREIGHTON and Plaintiff were creating.

49.    CREIGHTON and Plaintiff were in Europe for a little over a week. CREIGHTON asked Plaintiff to make the hotel reservations but ordered her to reserve a single room with separate beds to save money because he expressed that it was all he could afford for this trip. Plaintiff was forced to sleep in the same room as CREIGHTON in separate beds.

50.    On two occasions, Plaintiff woke up in the middle of the night because CREIGHTON was making loud noises, and when she looked at him, CREIGHTON was masturbating in his bed. Clearly, he wanted Plaintiff to wake up and see him masturbating.

51.    Moreover, on another occasion, CREIGHTON asked Plaintiff to reorganize the walk-in closet of his home. He intentionally left in there a 40-pound rubber torso that he would have sex with. When Plaintiff had to pick it up to do the

assigned work, semen spilled out from inside of it over her. CREIGHTON left it in the way and filled with semen because he knew Plaintiff would have to pick it up and move it to be able to organize the closet for him.

52.    When Plaintiff started dating a person while in Puerto Rico, CREIGHTON told her that she would have to break up with her boyfriend because it was not fair that she was dating, but he was not. In fact, CREIGHTON also became very angry when Plaintiff's boyfriend at the time, and herself, wrote on Facebook that they were "in a relationship". They updated their relationship status on January 1, 2019.

53.    In addition, CREIGHTON also sent Plaintiff numerous text messages with extremely high sexual content.

54.    CREIGHTON's pattern of conduct against Plaintiff was unwelcomed, offensive, intimidating, vulgar, abusive, humiliating, degrading, undignified, embarrassing, discriminating because of her gender, unreasonably interfered with her work performance, and was so severe that it created a hostile, abusive, intimidating and offensive work environment.

55.    Aside from rejecting CREIGHTON's sexual advances and letting him know several times that they were unwelcomed, offensive, intimidating, vulgar, abusive, humiliating, degrading, undignified and embarrassing, Plaintiff really had no one to complain to. Plaintiff worked directly for CREIGHTON and there was no one that she could complain to.

56.     Plaintiff was in a very difficult situation because she had moved to the island of Puerto Rico because of the employment offer made, the benefits promised, and the professional development opportunities that had been offered. She was also living in a property owned by CREIGHTON, did not know Spanish, and the job was her entire source of income.  Plaintiff wanted the sexual harassment to stop and hoped that it would, but she was financially unable to leave the position.

57.     When the Plaintiff rejected CREIGHTON's sexual advances, he retaliated against her and threatened to damage her reputation in the crypto currency industry, which he ultimately did.

58.     Plaintiff was also scared of CREIGHTON because he would get violent at times.

59.     On one occasion, after Plaintiff refused CREIGHTON's advances to date her while they were taking a car ride on Uber, he simply ordered the driver to stop the car, required her to step out of the car, and left Plaintiff on the sidewalk. During the Uber ride they were arguing because of how abusive he was being to his "girlfriend" (prostitute) at the time. CREIGHTON said to Plaintiff: "none of this would matter if you would just date me." During this Uber ride Plaintiff told CREIGHTON that he was not allowed to speak to her in that way; that such conduct was sexual harassment; and that he needed to treat her with respect. That is when CREIGHTON forced Plaintiff out of the car and left her on the side of the road.

60.     At all times, whenever CREIGHTON engaged in the aforementioned sexual misconduct, Plaintiff would explicitly tell him that his sexual advances were

not welcomed. Nevertheless, he would always continue his advances of sexual nature towards her, with the same frequency and persistence as before. He never took Plaintiff's complaints seriously. However, the Plaintiff was always afraid to lose her job, because CREIGHTON was her direct supervisor, and the sole owner of CS, and because the Plaintiff had left Texas to come to live to Puerto Rico, and had nowhere else to live in Puerto Rico.

61.    The frequency, continuity and intensity of the pattern of sexual harassment to which CREIGHTON submitted Plaintiff to in the workplace grew over the time, and became more severe each time, to the point that it unreasonably interfered with her work performance and created an intimidating, hostile, abusive and offensive working environment, causing her to suffer extreme shame, embarrassment, humiliation, nervousness, anxiety, fear and anger.

62.    CREIGHTON's sexual harassment towards the Plaintiff continued until her employment termination.

63.    Ultimately, because Plaintiff rejected CREIGHTON's constant sexual advances, she was terminated from her employment.

64.    Specifically, on January 10, 2019, Plaintiff was terminated from her employment without just cause, in a discriminatory fashion because of her gender, and in retaliation for never accepting CREIGHTON's unwelcome sexual advances and requests for sexual favors, and for opposing to her employer's unlawful employment practices.

65.    After Plaintiff was terminated, because of her refusal to submit to CREIGHTON's sexual advances, and with the clear intent of damaging her reputation, CREIGHTON posted on a Telegram chat with over six hundred important individuals from the crypto currency industry, that Plaintiff was a thief, that Plaintiff had stolen from him, and that he had to kick her out of his condo. When CREIGHTON figured out that it was the prostitute that he used to be with who had stolen from him, he deleted the message from the Telegram chat, but everybody had seen the message already and the damage to Plaintiff's reputation had already been done.

66.    As a direct and proximate result of Defendants' practices and conduct, the Plaintiff has suffered, among others, degradation both professionally and personally; humiliation; mental anguish, emotional distress; feelings of sadness, emptiness and hopelessness; feeling of worthlessness and guilt; anxiety; pain; suffering; sleep disturbances; depression; loss of self-esteem; change in eating patterns; anger outbursts; irritability; frustration even over small matters; loss of interest or pleasure in most or all normal activities; tiredness; lack of energy; trouble thinking, concentrating, making decisions and remembering things; unexplained physical problems, such as back pain or headaches; loss of employment, loss of wages and benefits; physical, mental and moral damages; emotional distress; loss of the capacity to enjoy life; and loss of financial earnings.

67.     Respondent's also significantly detracted from Plaintiff's ability to work in the crypto industry by making false a defamatory comments about her on public forums.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

68.     LLOYD filed a complaint with the Equal Employment Opportunity Commission in or around November 5, 2019, against Defendants.

69.     The EEOC thereafter issued LLOYD a Right-to-Sue Letter on September 25, 2020.

70.     LLOYD has, therefore, exhausted all required administrative remedies.

71.     On September 19, 2023, LLOYD filed a complaint with the California Civil Rights Department.

72.     On September 19, 2023, the California Civil Rights Department issued a Right to Sue Letter to LLOYD.

73.     LLOYD has, therefore, exhausted all required administrative remedies.

## FIRST CAUSE OF ACTION
### Sex Discrimination
### (Violations of Gov. Code § 12940(a))
### [Against All Defendants]

74.     LLOYD realleges and hereby incorporates by reference the allegations of paragraphs 1 through 73, inclusive, with the same force and effect as if said paragraphs were fully set forth herein.

75.     At all times material hereto, DEFENDANTS were employers within the meaning of Government Code § 12926(d).  DEFENDANTS were prohibited from discriminating in employment decisions, including layoffs, termination terms, conditions, or privileges of employment, on the basis of sex pursuant to

Government Code § 12940(a) and § 12926(r)(1).

76.    LLOYD was unlawfully subjected to unwelcome, offensive and harassing sexually discriminatory conduct on the basis of her sex or gender.

77.    Defendants terminated Lloyd because of her gender, in refusing to acquiesce to sexual advances.

78.    LLOYD was detrimentally affected by DEFENDANTS' conduct in violation of Government Code § 12940(a) and such conduct would have detrimentally affected any reasonable woman in LLOYD's position.

79.    DEFENDANTS' conduct was a substantial factor in causing LLOYD harm.

80.    As a direct, foreseeable and proximate result of DEFENDANTS, and each of their behaviors, LLOYD has suffered, and continues to suffer, substantial losses in past and future earnings, bonuses, deferred compensation and other employment benefits, all to LLOYD's damage in an amount according to proof at trial.

81.    As a result of DEFENDANTS' behavior, LLOYD has suffered and incurred, and is presently suffering and incurring, serious harm and damage to LLOYD's personal and professional reputation and credibility all to LLOYD's damage in an amount according to proof at trial.

82.    As a result of DEFENDANTS' behavior, LLOYD has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to LLOYD's damage in an amount according to proof at trial.

83.    LLOYD is informed and believes, and thereon alleges, that DEFENDANTS and their managing agents and employees committed the acts described herein deliberately, callously, maliciously, fraudulently, and in an oppressive manner intended to injure LLOYD and that such improper motives amounted to malice and a conscious disregard of her rights. In doing the acts as

herein alleged, DEFENDANTS, and their managing agents and employees, were acting pursuant to the authorization of DEFENDANTS. An award of punitive damages against DEFENDANTS is therefore warranted.

84.    As a result of the discriminatory conduct of DEFENDANTS, as alleged herein, LLOYD is entitled to costs of suit, including reasonable attorney's fees, pursuant to Government Code § 12965(b), in an amount according to proof at trial.

### SECOND CAUSE OF ACTION
**Sexual Harassment**
**Violation of Gov. Code § 12940(j)**
**[Against All Defendants]**

85.    LLOYD realleges and hereby incorporates by reference the allegations of paragraphs 1 through 84, inclusive, with the same force and effect as if said paragraphs were fully set forth herein.

86. LLOYD repeats and realleges each and every allegation contained in paragraphs 1 through 68, inclusive, and incorporates the same by reference as if fully set forth herein.

87.    The Fair Employment and Housing Act prohibits an employer from harassing an employee on the basis of their sex.

88.    At all times herein relevant, DEFENDANTS and each of them were and are employers, supervisory employees and/or employees subject to the provisions of FEHA. At all times herein relevant, LLOYD was and is an employee subject to the protections of FEHA.

89.    DEFENDANTS' actions described above created a hostile, offensive, intimidating, and abusive work environment for the Plaintiff, which unreasonably interfered with her duties and caused her emotional and economic damages.

90.    LLOYD was subjected to unwelcomed harassment based on her gender.

91.    LLOYD's workplace was permeated with discriminatory intimidation,

ridicule, and insult altered the conditions of LLOYD's employment and created an abusive working environment.

92.    The harassing behavior described above was both severe and pervasive.

93.    By their conduct and actions as alleged above, these DEFENDANTS, and each of them, continually and consistently harassed, abused, and threatened LLOYD because of her sex, and continually and repeatedly harassed, abused, and threatened, and subjected LLOYD to hostile, abusive, unwanted and intolerable work environment. DEFENDANTS' harassment was severe or pervasive.

94.    DEFENDANTS conduct was both objectively and subjectively offensive.

95.    DEFENDANTS and each of them, are strictly liable under FEHA for engaging in the above-mentioned conduct because CREIGHTON was the owner of CS and was LLOYD's direct supervisor. In addition, DEFENDANTS were and are aware of CREIGHTON's above-referenced conduct, and failed to take immediate, appropriate or proper corrective action.

96.    As further direct, foreseeable and proximate result of DEFENDANTS' behavior, LLOYD has suffered and incurred, and is suffering and incurring, serious harm and damage to LLOYD's personal and professional reputation and credibility, and DEFENDANTS having subjected LLOYD to such treatment, all to LLOYD's damage in an amount according to proof at trial.

97.    LLOYD is informed and believes, and thereon alleges, that DEFENDANTS and their managing agents and employees committed the acts described herein deliberately, callously, maliciously, fraudulently, and in an oppressive manner intended to injure LLOYD and that such improper motives amounted to malice and a conscious disregard of her rights. In doing the acts as herein alleged, DEFENDANTS, and their managing agents and employees, were acting pursuant to the authorization of DEFENDANTS. An award of punitive damages against DEFENDANTS is therefore warranted.

98.     LLOYD is entitled to costs and reasonable attorney's fees pursuant to California Government Code § 12965(b), and appropriate and effective equitable or injunctive relief pursuant to California Government Code § 12965(c).

### THIRD CAUSE OF ACTION
**Retaliation for Complaints about Discrimination and Harassment**
**(Violations of Gov. Code § 12940 (h))**
**[Against All Defendants]**

99.     LLOYD repeats and realleges each and every allegation contained in paragraphs 1 through 98, inclusive, and incorporates the same by reference as if fully set forth herein.

100.    At all times material hereto, LLOYD was an employee, protected by Government Code § 12940(a), and (h), which prohibits retaliation for complaining about discrimination in employment.

101.    LLOYD engaged in protected activity under California Government Code § 12940(h) by opposing and complaining about discriminatory, harassing, and hostile work environment created by DEFENDANTS as described above.

102.    LLOYD increased her complaints over time, particularly in the period immediately preceding DEFENDANTS' terminating her.

103.    LLOYD's complaints regarding discrimination and harassment were a motivating and substantial reason for Respondent's decision to terminate Lloyd.

104.    As a direct, foreseeable and proximate result of DEFENDANTS', and each of their behaviors, LLOYD has suffered, and continues to suffer, substantial losses in past and future earnings, bonuses, deferred compensation, and other employment benefits, all to LLOYD's damage in an amount according to proof at trial.

105.    As a result of DEFENDANTS' behavior, LLOYD has suffered and incurred and is presently suffering and incurring, serious harm and damage to LLOYD's personal and professional reputation and credibility, all to LLOYD's

damage in an amount according to proof at trial.

106.    As a result of DEFENDANTS' behavior, LLOYD has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to LLOYD's damage in an amount according to proof at trial.

107.    LLOYD is informed and believes, and thereon alleges, that DEFENDANTS and their managing agents and employees committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure LLOYD and that such improper motived amounted to malice and a conscious disregard of LLOYD's rights. In doing the acts herein alleged, DEFENDANTS, and their managing agents and employees, were acting pursuant to the authorization of DEFENDANTS. An award of punitive damages against DEFENDANTS is therefore warranted.

108.    As a result of the retaliatory conduct of DEFENDANTS, and each of them, as alleged herein, LLOYD is entitled to costs of suit, including reasonable attorney's fees, pursuant to Government Code § 12965(b), in according to proof at trial.

## FOURTH CAUSE OF ACTION
### Whistleblower Retaliation
### (Violations of Lab. Code § 1102.5(b))
### [Against all Defendants]

109.    LLOYD repeats and realleges each and every allegation contained in paragraphs 1 through 108, inclusive, and incorporates the same by reference as if fully set forth herein.

110.    At all times material hereto, LLOYD was an employee, protected by Labor Code § 1102.5(b), which prohibits whistleblower retaliation.

111.    At all times material hereto, DEFENDANTS were employers within the meaning of California Labor Code § 1132.2, and as such were prohibited from

1    engaging in whistleblower retaliation.

2    112.    Under Labor Code section 1102.5(b), DEFENDANTS were

3    prohibited from retaliating against LLOYD for disclosing information about the

4    violation of federal, state, or local statue, rule or regulation to any person who has

5    authority over LLOYD or anyone without authority to investigate.

6    113.    DEFENDANTS knew that LLOYD disclosed to her managers, who

7    had authority to investigate, discover, or correct legal violations about unlawful

8    actions.  Specifically, Lloyd disclosed to CREIGHTON that he was engaging in

9    harassing conduct.

10    114.    LLOYD complained of being the victim of discrimination and

11    harassment.

12    115.    LLOYD's complaints increased over time, particularly in the time

13    immediately before DEFENDANTS terminated LLOYD.

14    116.    DEFENDANTS had reasonable cause to believe that the information

15    that LLOYD disclosed evidenced a violation of applicable laws.

16    117.    LLOYD reasonably believed that DEFENDANTS' acts were a

17    violation of law.

18    118.    LLOYD's disclosure of information was a contributing factor in

19    DEFENDANTS decision to discharge LLOYD.

20    119.    As a direct, foreseeable and proximate result of DEFENDANTS, and

21    each of their behaviors, LLOYD has suffered, and continues to suffer, substantial

22    losses in past income, bonuses, deferred compensation, and other employment

23    benefits, all to LLOYD's damage in an amount according to proof at trial.

24    120.    As further direct, foreseeable and proximate result of

25    DEFENDANTS, and each of their behaviors, LLOYD has suffered and incurred,

26    and is suffering and incurring, serious harm and damage to LLOYD's personal and

27    professional reputation and credibility, and DEFENDANTS, each of them, having

28    subjected LLOYD to such treatment, caused LLOYD's damage in an amount

according to proof at trial.

121.    As further direct, foreseeable and proximate result of DEFENDANTS and each of their behaviors, LLOYD has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to LLOYD's damage in an amount according to proof at trial.

122.    LLOYD is informed and believes, and thereon alleges, that DEFENDANTS committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure LLOYD and that such improper motives amounted to malice and a conscious disregard of LLOYD's rights.  An award of punitive damages against WHITING and RESPONDENT DOES is therefore warranted.

123.    As a result of the retaliatory conduct of DEFENDANTS, and each of them, as alleged herein, LLOYD is entitled to costs of suit, including reasonable attorney's fees, pursuant to Government Code § 1021.5, in according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, LLOYD demands judgment against DEFENDANTS and their agents and employees as follows:

1.  Actual damages, including loss of past earnings, bonuses, deferred compensation, and other employment benefits in an amount according to proof at time of trial;

2.  General and special damages, including, but not limited to, pain and suffering, emotional distress, loss of reputation and medical expenses, in an amount according to proof at time of trial;

3.  Consequential and incidental damages and expenses, in an amount according to proof at time of trial;

4.  Pre-judgment and post-judgment interest, at the prevailing legal rate;

5.  As to the First, Second, and Third Causes of Action, for attorney's fees pursuant to Government Code § 12965(b);

6.  As to the First, Second, Third, and Fourth causes of action, for punitive damages in an amount appropriate to punish DEFENDANTS for their wrongful conduct and set an example for others;

7.  As to the Fourth Cause of Action, for attorney's fees pursuant to Government Code § 1021.5;

8.  For costs of suit incurred herein; and

9.  For such other and further relief as the Court may deem just, proper and equitable.

DATED:  September 9, 2024          SESSIONS & KIMBALL LLP


By: _____
        LARRY HERRERA
        Attorneys for plaintiff
        SCARLET LLOYD

## JURY TRIAL DEMAND

Plaintiff Scarlet Lloyd hereby makes a demand for her constitutional right to trial by jury for all triable issues in the above–titled action.


DATED:  September 9, 2024          SESSIONS & KIMBALL LLP


By: _____
        LARRY HERRERA
        Attorneys for plaintiff
        SCARLET LLOYD

FIRST AMENDED COMPLAINT